**CANTOR FITZGERALD,
L.P., Plaintiff,**

v.

**PREBON SECURITIES (USA)
INC., Defendant.**

**C.A. No. 16769.**

Court of Chancery of Delaware,
New Castle County.

Submitted: Jan. 21, 1999.
Decided: Feb. 8, 1999.

Rodman Ward, Jr., Thomas J. Allingham, II, Karen L. Valihura, Joseph M. Asher, Rosemary Goodier of Skadden, Arps, Slate, Meagher & Flom, Wilmington, Delaware; of counsel: Thomas J. Schwartz of Skadden, Arps, Slate, Meagher & Flom, New York City, John F. Cambria and Susan P. Rothwell of Christy & Viener, New York City, for Plaintiff.

Robert K. Payson and Arthur L. Dent of Potter Anderson & Corroon, Wilmington, Delaware; of counsel: P. Kevin Castle, David L. Barres and Matthew A. Leish of Cahill Gordon & Reindel, New York City, for Defendant.

## OPINION

STEELE, Vice Chancellor.

### I. Issue Presented

At issue is whether under the NASD Rules Plaintiff, a non-NASD member, must arbitrate before the NASD its claims against Defendant, a NASD member, because Plaintiff owns a 99.5% partnership interest in a NASD member, through which Plaintiff carries out its government securities brokerage business and which Plaintiff alleges in its Complaint has been injured as a result of Defendant's actions. Specifically, I must determine whether, under Rule 10201 of the NASD Manual—Code of Arbitration Procedure, Plaintiff is an "associated person,"and whether common law agency and contract principles bind Plaintiff to its affiliate's agreement, as a NASD member, to arbitrate certain claims before the NASD. Because the status of "associated persons" is limited to natural persons and Plaintiff is a Limited Partnership, Plaintiff is not an "associated person." The NASD Rules, therefore, do not require Plaintiff to submit its claims against Defendant to NASD arbitration. Furthermore, because Defendant fails to convince me that a principal-agent relationship exists between Plaintiff and its affiliate and because Plaintiff does not rely on its relationship with its affiliate alone to make its claims in this action, common law agency and contract principles do not bind Plaintiff to its affiliate's arbitration agreement. Finally, while federal law generally applied to federally sanctioned arbitration agreements favors arbitration when doubt arises about a dispute being arbitrable, this law carries no weight when the issue focuses on whether a person or entity must submit to arbitration under an agreement to which it is not a party. I, therefore, deny Defendant's motion to dismiss or, alternatively, stay this action in favor of a NASD arbitration Defendant has commenced against Plaintiff.

### II. Factual Background

Plaintiff CFLP is a Delaware limited partnership, governed by the Agreement of Limited Partnership of Cantor Fitzgerald, L.P., Amended and Restated as of August 28, 1996 (the "Partnership Agreement"). CFLP is not a member of the National Association of Securities Dealers (the "NASD"). CFLP owns, *inter alia*, a 99.5% interest in Cantor Fitzgerald Securities ("CFS"), a New York general partner-

ship engaged in the inter-dealer and institutional brokerage of Treasuries and other government securities. CFS is a member of the NASD.

Defendant Prebon Securities (USA), Inc. ("Prebon") is a Delaware corporation. Prebon is an inter-dealer broker of repurchase and reverse-repurchase agreements (collectively "repos"). Prebon's repo trades of Treasuries clear through its account with Government Securities Clearing Corporation ("GSCC"). Prebon is a member of the NASD. By becoming NASD members, CFS and Prebon agreed to submit to NASD's arbitration rules set forth in the NASD Manual—Code of Arbitration Procedure (the "NASD Code").

On April 6, 1998, CFLP "collectively with its affiliates and predecessors-in-interest" commenced an action in this Court (the "Related Action") against Iris Cantor ("Cantor"), Rodney Fisher ("Fisher") and Cantor Fitzgerald Incorporated ("CFI"), all of whom are "Partners" of CFLP under the Partnership Agreement, as well as Chicago Board Brokerage, L.L.C. ("CBB") and Market Data Corporation ("MDC") (collectively, the "Related Action Defendants"). In the Related Action, CFLP has alleged that Cantor, Fisher and CFI breached fiduciary and contractual duties they owe to CFLP under the Partnership Agreement by developing an electronic system ("MarketPower") for trading and brokering U.S. Treasuries in direct competition with CFS, to the detriment of CFLP. CFLP has further alleged that MDC and CBB aided and abetted those breaches of duty by CFLP's partners and tortiously interfered with CFLP's contractual relationships with Cantor, Fisher and CFI under the Partnership Agreement. MDC is the entity through which Cantor, Fisher and CFI developed MarketPower. CBB contracted with MDC for MDC to develop MarketPower for CBB's use and to license MarketPower to CBB. Voluminous discovery has proceeded in the Related Action, and trial begins on March 8, 1999.

On November 9, 1998, CFLP "collectively with its affiliates and predecessors-in-interest" filed this action (the "Prebon Action"). In the Prebon Action, CFLP alleges that, by making its GSCC account available to customers of CBB for clearing trades done on MarketPower, Prebon has aided and abetted the Related Action Defendants in their breaches of fiduciary duty, has tortiously interfered with CFLP's contractual relationships with Cantor, Fisher, and CFI under the Partnership Agreement, and has unjustly enriched itself. CFLP filed the Prebon Action in response to Prebon's announcement that it would make its GSCC account available to customers of CBB to clear trades done on MarketPower.

On November 23, 1998, Prebon initiated an arbitration against CFLP and CFS before the NASD. Prebon's Statement of Claim in that arbitration seeks a declaratory judgment that it may use its GSCC account to clear trades made by CBB, and an order enjoining CFLP and CFS from interfering with lawful arrangements between Prebon and GSCC. Prebon also requests a declaratory judgment that it has no liability under the Complaint in this action. Prebon now seeks an order from this Court stating that CFLP is obligated to arbitrate its claims against Prebon before the NASD and dismissing this action or staying it pending arbitration before the NASD. Without a court order stating that CFLP is obligated to arbitrate its claims against CFLP before the NASD, the NASD will not serve a Statement of Claim on CFLP.

### III. The Parties' Contentions

Prebon claims that under Rule 10201 of the NASD Code that Prebon and CFLP are bound to arbitrate the claims in the Prebon Action before the NASD because they are members, "associated persons" or "certain others" under the NASD Rules, and because their dispute arises out of and in connection with their respective businesses. Prebon also claims that even if

CFLP is not an "associated person" or "certain other" that CFLP is bound by CFS's arbitration agreement under common law agency and contract principles and, therefore, is obligated to arbitrate before the NASD its claims against Prebon. Prebon further argues that federal law requires that all doubts be resolved in favor of arbitration.

CFLP claims it is not bound to arbitrate the claims in the Prebon Action before the NASD because (i) the claims are part and parcel to the litigation pending before this Court in the Related Action; (ii) the claims are outside the bounds of NASD arbitration; (iii) CFLP is not a member, "associated person," or "certain other" under the NASD Rules; and (iv) even if CFLP were a member, "associated person," or "certain other," mandatory arbitration of the claims would be impermissible because CFLP has not signed an arbitration agreement.

## IV. Discussion

### A. The NASD Rules

Rule 10201(a) of the NASD Code, entitled "Required Submission," sets forth the disputes, claims and controversies that *must be* submitted to NASD arbitration. It provides:

> [A] dispute, claim or controversy eligible for submission under Rule 10100 Series between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of such associated person(s) with such member, shall be arbitrated under this Code, at the instance of:
>
> (1) a member against another member;
>
> (2) a member against a person associated with a member or a person associated with a member against a member; and
>
> (3) a person associated with a member against a person associated with a member.[1]

### 1. Interpretation of Rule 10201(a)

Prebon interprets Rule 10201(a) to mean that all disputes between or among members and/or associated persons, and/or certain others must be submitted to the NASD for arbitration if they arise out of or in connection with the business of a member or associated person. I disagree with Prebon's interpretation. I find Rule 10201(a) more limited than Prebon suggests.

 Rule 10201(a) requires the arbitration of the type of disputes, claims or controversies described within it "at the instance of[2]: (a) a member against a member; (b) a member against a person associated with a member or a person associated with a member against a member; [or] a person associated with a member against a person associated with a member." I interpret this unambiguous language to restrict the mandatory submission of claims, disputes or controversies to those instigated by (i) a member against another member, (ii) a member against a person associated with a member, (iii) a person associated with a member against a member or (iv) a person associated with a member against a person associated with a member. Where these distinct adversaries are parties to the arbitration, Rule 10201(a) requires that they submit to NASD arbitration those disputes, claims or controversies that (i) are eligible for submission under Rule 10100 Series, (ii) are between or among the members and/or the associated persons, and/or certain others, and (iii) arise in connection with the business of such member(s) or in connection with the activities of such associated person(s) or out of the

---

1. NASD Manual–Code of Arbitration Procedure, Rule 10201(a).

2. taken to mean: at the suggestion or instigation of.

employment or termination of employment of such associated person(s) with such member. Accordingly, Rule 10201(a) requires non-member "certain others" to submit to NASD arbitration their disputes with members or associated persons only in instances in which (i) there is an arbitration between or among members and associated persons and (ii) the non-member "certain others" ' dispute, claim or controversy (a) is eligible for submission under the Rule 10100 Series and (b) arises in connection with the business of the member(s) or in connection with the activities of the associated person(s) or out of the employment or termination of employment of the associated person(s) with the member in the underlying arbitration. If however, the arbitration has not been instigated as described and will not involve members and/or associated persons as adversarial parties, Rule 10201 does not require a non-member "certain other" to submit its dispute, controversy or claim with or against a member or associated person to NASD arbitration.

Prebon's interpretation, as well as the cases which Prebon cites in support of its interpretation, ignore the language in Rule 10201(a) beginning with "at the instance of" and the language that follows limiting the set of claims which Rule 10201(a) requires to be submitted to NASD arbitration.[3] If the NASD intended the result Prebon proffers, it would have left out this language and said *"all* disputes, claims or controversies . . . shall be arbitrated under this Code," instead of *"a* dispute, claim or controversy . . . shall be arbitrated under this Code, at the instance of:" specific entities or persons against specific entities or persons. Since the NASD included this unambiguous language, however, I cannot ignore its meaning or significance, and I conclude the NASD intended the language to limit those who would have standing to demand arbitration as well as those who must respond to arbitration.

## 2. Application of Rule 10201(a)

■ It necessarily follows from the above that the first step of the analysis is to determine whether this is an instance in which the arbitration will involve (i) a member against another member, (ii) a member against a person associated with a member (iii), a person associated with a member against a member or (iv) a person associated with a member against a person associated with a member. Prebon has commenced a NASD arbitration against CFS, an NASD member, and CFLP, a non-NASD member. An arbitration instigated by Prebon against CFS normally would satisfy the first step of a Rule 10201(a) analysis. In this instance, however, it does not because Prebon's inclusion of CFS in its NASD arbitration amounts to nothing more than a procedural tactic to bolster its argument that CFLP is obligated to arbitrate its claims against Prebon before the NASD. It is obvious from the circumstances and the relief Prebon requests in its Statement of Claim filed with the NASD that Prebon commenced the NASD arbitration to resolve the claims asserted against it in the Prebon Action. CFS, however, is not a party to the Prebon Action.[4] CFS would not even have been a legitimate Plaintiff in the Prebon Action.

3. *See, e.g., McMahan Securities Co. L.P. v. Forum Capital Markets L.P.,* 35 F.3d 82, 86 (2d Cir.1994) (interpreting Rule 10201 to have two requirements: first, that the dispute "be 'between or among members and/or associated persons, and/or certain others,' " and, second, that the disputes "be ones 'arising in connection with the business' of members or arising 'in connection with the activities of such associated person(s).' ")

4. Prebon argues that CFS is a party to the Prebon Action because CFLP brought the Prebon Action "collectively with its affiliates and predecessors-in-interest." The Court of Chancery Rules, however, do not contemplate this type of collective action and I, therefore, consider the language in CFLP's Complaint that it brings this action "collectively with its affiliates" to be a legal nullity. I have no clue why the plaintiff styled the party plaintiff in this way. Perhaps a fashionable nuance in modern pleading has passed me by. Regardless, CFLP is the only recognized plaintiff in this action under our rules.

The Prebon Action arises from alleged violations of CFLP's rights under the Partnership Agreement. Since CFS is not a party to the Partnership Agreement, CFS has no legal rights similar to CFLP's which it could have asserted against Prebon in the Prebon Action. Furthermore, Prebon fails to convince me that CFLP and CFS are alter-egos. I, therefore, will not allow Prebon to fulfill Rule 10201(a)'s threshold requirement merely by naming CFS a party to an arbitration allegedly intended to resolve CFLP's claims against Prebon.

■ Prebon claims that CFLP is a person associated with a member ("an associated person"). If CFLP is an "associated person," the NASD arbitration would involve a member against an associated person and fulfill Rule 10201(a)'s threshold requirement.

The NASD By–Laws Article I(ee) provide:

> "person associated with a member" or "associated person of a member" means:
>
> (1) a natural person registered under the Rules of the Association; or
>
> (2) a sole proprietor, partner, officer, director, or branch manager of a member, or a natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member, whether or not any such person is registered or exempt from registration with the NASD under these By–Laws or the Rules of the Association; . . . . [5]

Prebon argues that CFLP is an "associated person" because it is a partner in CFS, a NASD member. CFLP argues that regardless of its partnership interest in CFS, it is not an "associated person" because under the NASD definition of "associated person" only natural persons can be "associated persons." While this Court has not ruled on whether the NASD definition of "associated persons" limits the status of "associated persons" to natural persons,[6] the Fifth Circuit Court of Appeals and the Second Circuit Court of Appeals have each ruled on the issue and reached inconsistent conclusions. In *Tays v. Covenant Life Ins. Co.*, the Fifth Circuit Court of Appeals found the definition to limit the status of "associated persons" to natural persons.[7] The *Tays* Court reasoned:

> Read in its entirety, the definition of associated person in the NASD by-laws seems calculated to exclude corporate entities such as [defendant]. Every use of the word "person" in the definition is preceded and qualified by the word "natural" (except for the final instance, which accomplishes the same effect by the modifier "such"). [The proponent of arbitration] argues that, because the definition does not explicitly limit "sole proprietor, partner, officer, director or branch manager" to natural persons, those terms necessarily include corporate or other entities, as well.
>
> Such an interpretation, however, ignores the fact that those terms are followed by the clause, "or any natural person occupying a similar status or performing similar functions [.]" Reading the section as a whole demonstrates its focus on natural persons. The terms [the proponent of arbitration] refers to make sense in the context only when interpreted referring to individuals. This sense is reinforced when the defini-

---

5. NASD By–Laws, Article I(ee).

6. In *VonFeldt v. Stifel Fin. Corp.*, Del.Ch., C.A. No. 15688, 1997 WL 340915, mem. op., Chandler V.C. (June 6, 1997), the Chancellor found a corporation not to be an "associated person" because the term corporation, unlike the term partner, is not listed in the definition of associated persons. While the Chancellor referenced and explained the Second Circuit's decision, he neither adopted nor rejected its holding or reasoning regarding whether or not the definition of "associated persons" includes non-natural persons.

7. *Tays v. Covenant Life Ins. Co.*, 964 F.2d 501 (5th Cir.1992).

tion is compared with the statutory definition contained in the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(21). The changes from the statute to the NASD by-laws suggest a desire to limit the NASD definition to natural persons.[8]

In *McMahan Securities Co L.P. v. Forum Capital Markets,* the United States Court of Appeals for the Second Circuit held that the NASD definition of "associated persons" did not limit the status of "associated persons" to natural persons.[9] The *McMahan* Court reasoned:

> The plain language of the NASD definition of associated person states that "every ... partner" of a member shall be considered an associated person of a member. To be sure, the definition also refers to "any natural person," but the usage of the term "natural person" in these latter clauses indicates that the limitation does not modify the terms already listed, including "partner." Indeed, the "associated person" definition begins by stating that the term refers to *"every* sole proprietor, partner, officer, director, or branch manager of any member, *or* any natural person occupying a similar status or performing similar functions, *or* any natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by such member." NASD *Manual* ¶ 1101(m) (emphasis added). If the term "partner" was confined to natural persons, the subsequent phrase "or any natural person occupying a similar status" would be redundant. Moreover, if the NASD intended that "partners" be so confined, it could have easily used the phrase "any other natural person" to make its meaning clear.[10]

I, however, agree with the *Tays* Court's reasoning, and, therefore hold that the status of "associated person" is limited to natural persons. In reaching that conclusion, I respectfully disagree with several of the reasons the *McMahan* Court advanced in support of its holding that the status of "associated person" is not limited to natural persons. First, the *McMahan* Court emphasizes that the NASD definition of "associated person" begins by stating that *"every* sole proprietor, partner...." The NASD definition, however, begins with *"a* sole proprietor, partner ...," undermining any subtle inference that the drafters intended the definition of "associated persons" to include both natural person partners and non-natural person partners. Second, I am not persuaded that the failure to modify explicitly the clause "a sole proprietor ... branch manager" with natural persons means that NASD intended those terms to include non-natural persons. With the exception of "partner," the other terms in the clause necessarily refer, by their own definition, to natural persons. To modify explicitly those terms with "natural person" *would be* redundant. Furthermore, I find the inclusion of "partner" in this list of positions limited to natural persons to illustrate the intention to limit "partners" to natural persons in this context. Third, rather than evidencing redundancy, the clause "or any natural persons occupying a similar status or performing similar functions" supports the conclusion that the terms "sole proprietor ... branch manager" are limited to natural persons. It would make no sense to limit to natural persons positions of "similar status" or "similar functions" but not to limit to natural persons the actual status or functions to which those positions are similar.

Because CFLP is not a natural person, it is not an "associated person." Since CFLP is neither a member nor an "associated person" this is not an instance in which arbitration would involve (i) a member against another member, (ii) a member against a person associated with a member

---

8. *Id.* at 503.

9. *McMahan,* 35 F.3d 82.

10. *Id.* at 87.

(iii), a person associated with a member against a member or (iv) a person associated with a member against a person associated with a member. As a result, Rule 10201(a) of the NASD Code does not require CFLP to submit its claims to NASD arbitration.

## B. Common Law Agency and Contract Principles

■ Prebon also argues that under common law agency and contract principles CFLP is bound to CFS's agreement, as an NASD member, to arbitrate. Prebon claims that since CFLP engages in the institutional brokerage of Treasuries and other government securities through CFS, CFS is CFLP's agent and CFLP is bound by CFS's agreement to arbitrate. Prebon, however, fails to convince me that a principal-agent relationship exists between CFLP and CFS. The principal's right to control an agent is a test of whether a principal-agent relationship exists.[11] While Prebon cites the fact that CFLP's claims against Prebon involve alleged wrongs committed against CFS and that CFLP refers to itself and CFS interchangeably throughout its Complaint, Prebon's argument lacks any evidence that CFLP controls and dominates CFS's activities other than the fact that CFLP owns a 99.5% partnership interest in CFS. This ownership position alone, however, is not enough to establish a principal-agent relationship and bind CFLP to CFS's arbitration agreement.[12] Furthermore, even if there were a principal-agent relationship between CFLP and CFS, Prebon cites no cases in which a court bound the principal to its agent's arbitration agreement or in which the agent was bound by the principal's arbitration agreement when the principal itself was not a party to the action. I do not view the cases Prebon cites in support of its argument analogous to this case since in this instance the alleged agent is the signatory to the arbitration agreement and is not even a party to the action.[13] I, therefore, do not find CFLP to be bound by CFS's arbitration agreement under common law agency principles.

Prebon also cites cases in which courts found a party to be bound by its affiliates' arbitration agreement because that party earlier had relied on its relationship to its affiliate to make its claims in the action.[14] The reasoning underlying this outcome is that it is unfair to allow a party to rely on its relationship with an affiliate in order to make a claim and then attempt to disavow that relationship in order to avoid arbitration.[15] Again, however, I do not find these cases analogous to the circumstances in this case. While CFLP cites its relationship to CFS in sections of its Complaint and alleges that Prebon's and the Related Action Defendants' actions have injured CFS to CFLP's detriment, CFLP does not rely on its relationship to CFS in order to make its claims in this action. Rather, CFLP makes its claims in this action pursuant to its alleged rights as a direct party to the Partnership Agreement, which it is able to do independent of its affiliation with CFS.

Finally, Prebon fails to persuade me that CFLP, as opposed to CFS, brought

11. *J.E. Rhoads & Sons, Inc. v. Ammeraal, Inc.,* Del.Super., 1988 WL 32012, at *3, Gebelein, J. (March 30, 1988). *Cf. Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.,* 658 F.Supp. 1061, 1084 (D.Del.1987) (finding that a parent corporation's liability for its subsidiary's actions under agency theory depends on the parent's control over the subsidiary).

12. *Cf. Phoenix Canada Oil,* 658 F.Supp. at 1061 (finding, under agency theory, that a parent corporation was not liable for its subsidiary's activities where (i) the subsidiary was wholly owned by the parent, (ii) there were officers and directors common to the boards of both parent and subsidiary, (iii) the parent corporation was involved in substantial financial decisions of the subsidiaries).

13. *See, e.g., Pritzker v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 7 F.3d 1110, 1122 (3rd Cir.).

14. *See, e.g., In re Oil Spill By Amoco Cadiz,* 659 F.2d 789, 795–96 (7th Cir.1981), *In re Salomon Inc. Shareholders' Deriv. Litig.,* [1994–95 Transfer Binder] Fed.Sec.L.Rep. (CCH) P. 98,454, at 91,118–19, 1994 WL 533595 (S.D.N.Y. Sept. 30, 1994).

15. *Id.*

the action against Prebon as a tactic to avoid submission of its claims against Prebon to NASD arbitration, and that it would be unfair for CFLP and CFS to avoid NASD arbitration on the basis of this "mere technicality." As previously stated, CFLP brings this action pursuant to its alleged rights under the Partnership Agreement. Since CFS is not a party to the Partnership Agreement, it would not have standing to bring the action alone. Not only is there a valid basis for CFLP to bring this action rather than CFS, CFS has no similar right to assert against Prebon in this action.

### C. Federal Law Governing Arbitration's Scope Does Not Mandate Mandatory Submission Here

■ When parties to a federal arbitration agreement dispute whether a particular claim or controversy should be litigated in the courts or subject to mandatory arbitration and there is, in fact, doubt as to whether the parties to the agreement ever expected or wanted the claim or controversy to be arbitrated, there is no question federal law requires that the doubt be resolved in favor of arbitration.[16] Apparently, the federal law applies even where, as here, litigation in a court would be faster, more efficient, less costly and more reasonable under all of the circumstances.[17] This federal law, however, is applied only to determine the scope of the matters that are to be submitted to arbitration once it is established that a valid agreement to arbitrate exists.[18] It does not apply where the dispute focuses on whether an entity, not a party to an arbitration agreement, must submit its claim to mandatory arbitration. Therefore, this

dispute has been analyzed without regard to the federal policy that any doubt must be resolved in favor of arbitration.

### V. Conclusion

Neither the NASD Rules, common law agency and contract principles nor federal law favoring arbitration obligate CFLP to submit its claims against Prebon to NASD arbitration because of CFLP's affiliation with CFS. I, therefore, deny Prebon's motion requesting an order stating that CFLP is obligated to arbitrate its claims against Prebon before the NASD and dismissing this action or staying it pending the arbitration proceeding which Prebon has commenced before the NASD.

---

16. *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the *scope* of arbitrable issues should be resolved in favor of arbitration.") (emphasis added).

17. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (finding that Congress' preeminent goal in passing the Federal Arbitration Act

was to enforce private arbitration agreements into which parties had entered and that that goal overrides Congress's co-existing goal of encouraging efficient and speedy dispute resolution, even if the result is "piecemeal" litigation, at least absent a countervailing policy manifested in another federal statute).

18. *See infra.* n. 13.