# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| NEURVANA MEDICAL, LLC, a Delaware limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2019-0034-KSJM |
| BALT USA, LLC, a Delaware limited liability company, BALT INTERNATIONAL, a French S.A.S., DAVID FERRERA, an individual, and PASCAL GIRIN, an individual, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted: June 20, 2019
Date Decided: September 18, 2019

Jason A. Cincilla, Amaryah K. Bocchino, Ryan W. Browning, Tye C. Bell, MANNING GROSS + MASSENBURG LLP, Wilmington, Delaware; John M. Pierce, Michael M. Pomerantz, Elizabeth C. DeGori, Matthew J. Kokot, PIERCE BAINBRIDGE BECK PRICE & HECHT LLP, New York, New York; *Counsel for Plaintiff Neurvana Medical, LLC.*

Lori W. Will, Daniyal M. Iqbal, Jeremy W. Gagas, WILSON SONSINI GOODRICH & ROSATI, P.C., Wilmington, Delaware; Dylan J. Liddiard, Charles A. Talpas, WILSON SONSINI GOODRICH & ROSATI, P.C., Palo Alto, California; Brian J. Levy, WILSON SONSINI GOODRICH & ROSATI, P.C., New York, New York; *Counsel for Defendants Balt USA, LLC, Balt International, S.A.S., David Ferrera, and Pascal Girin.*

**McCORMICK, V.C.**

Defendant Balt International, S.A.S., a French company headquartered in France, has moved to dismiss the claims against it for lack of personal jurisdiction. As its primary argument, the plaintiff contends that Balt International is bound by a Delaware forum selection clause contained in an Asset Purchase Agreement (the "Purchase Agreement") between the plaintiff and Balt International's subsidiary, Balt USA, LLC. For this purpose, the plaintiff invokes a test adopted by this Court in 2004, which allows a court to bind a non-signatory to an agreement's forum selection provision if that party is "closely related" to the agreement. A party is "closely related" in this sense if it *either* receives a direct benefit from the agreement *or* it was foreseeable that the party would be bound by the agreement.

The closely-related test has been criticized as overbroad and impracticable, and its second component part—the foreseeability inquiry—is a significant contributor to the test's disrepute. In an attempt to delineate the parameters of the closely-related test, this decision reviews this Court's prior applications of the foreseeability inquiry, ultimately isolating cases in which the inquiry was applied as a standalone basis for deeming a non-signatory "closely related" to the agreement. In the end, the explication is largely academic, because the plaintiff fails to plead facts sufficient to satisfy the closely-related test even under its broad formulation of the foreseeability inquiry. This decision thus declines to bind Balt International to the Purchase Agreement's forum selection provision.

1

In the alternative, the plaintiff relies on the agency theory of personal jurisdiction, arguing that Balt USA is an agent of Balt International and that this Court has jurisdiction over the latter based on the specific jurisdictional acts of the former. This decision rejects this argument as well and grants Balt International's motion to dismiss.

## I. FACTUAL BACKGROUND

On September 2, 2016, Balt International acquired a company called Blockade, which became Balt USA. Blockade's three products in development at the time of the acquisition were spun out into Neurvana Medical, LLC ("Plaintiff" or "Neurvana"), a newly-formed and independent neuro-medical company.

Of Plaintiff's three products, Titan—a support/guide and aspiration catheter that delivers a device to a brain aneurysm and removes blood clots during ischemic stroke—was closest to launch. Plaintiff thus focused on completing its development and finding a partner to commercialize it. This search led to the Purchase Agreement at issue in this litigation, through which Balt USA acquired Titan from Plaintiff.

At the time of the transaction, Titan had not obtained the U.S. or European regulatory approvals required to market and sell the product. On January 12, 2018, the parties executed an Amendment to the Purchase Agreement (the "Amendment") transferring responsibility for regulatory approval in Europe to Balt USA. The

2

Amendment obligated Balt USA to use contractually-defined "Commercially Reasonable Efforts" to achieve regulatory approval. Under the Purchase Agreement, Plaintiff was entitled to additional payments in the event Titan received regulatory approvals by a date certain. Titan did not receive the relevant regulatory approvals by that deadline.

Plaintiff commenced this litigation on January 17, 2019.[1] Plaintiff's primary claim is that Balt USA breached its obligations to use Commercially Reasonable Efforts to achieve regulatory approval. Plaintiff has also asserted an array of claims against the following: Balt International; Balt USA's chief operating officer and Plaintiff's former board chairman, David Ferrera; and Balt USA's chief executive officer, Pascal Girin.

The defendants moved to dismiss the Complaint on February 25, 2019. Balt International, Ferrera, and Girin moved to dismiss pursuant to Court of Chancery Rule 12(b)(2) for lack of personal jurisdiction. With Balt USA, they also moved to dismiss pursuant to Court of Chancery Rule 12(b)(6) for failure to state a claim. The parties completed briefing on May 24, 2019,[2] and the Court heard oral arguments on

---

[1] C.A. No. 2019-0034-KSJM Docket ("Dkt.") 1, Verified Compl. (the "Complaint" or "Compl.").

[2] Dkt. 28, Defs.' Opening Br. in Supp. of Their Mot. to Dismiss Pl.'s Verified Compl. ("Defs.' Opening Br."); Dkt. 35, Pl. Neurvana Medical LLC's Answering Br. in Opp'n to Defs.' Motion to Dismiss Pl.'s Verified Compl. ("Pl.'s Answering Br."); Dkt. 39, Defs.'

June 20, 2019.[3]  By a letter dated September 18, 2019, the Court requested supplemental briefing on Ferrera and Girin's Rule 12(b)(2) motion.  The Court held in abeyance the Rule 12(b)(6) motion pending supplemental briefing.  This decision resolves Balt International's Rule 12(b)(2) motion.

## II.    LEGAL ANALYSIS

Because a motion under Rule 12(b)(2) presents factual and legal questions, a court cannot grant it "simply by accepting the well pleaded allegations of the complaint as true, because the pleader has no obligation to plead facts that show the amenability of the defendant to service of process."[4]  Thus, "[w]hen a defendant moves to dismiss a complaint pursuant to Court of Chancery Rule 12(b)(2), the plaintiff bears the burden of showing a basis for the court's exercise of jurisdiction over the defendant."[5]  In ruling on a 12(b)(2) motion, this Court may "consider the pleadings, affidavits and any discovery of record."[6]  "If, as here, no evidentiary

Reply Br. in Further Supp. of Their Mot. to Dismiss Pl.'s Verified Compl. ("Defs.' Reply Br.").

[3] Dkt. 43, Oral Arg. on Defs.' Mot. to Dismiss.

[4] *Ruggiero v. FuturaGene, plc.*, 948 A.2d 1124, 1131 (Del. Ch. 2008) (quoting *Hart Hldg. Co. v. Drexel Burnham Lambert, Inc.*, 593 A.2d 535, 538 (Del. Ch. 1991)).

[5] *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007) (citing *Werner v. Miller Tech. Mgmt., L.P.*, 831 A.2d 318 (Del. Ch. 2003)).

[6] *Id.* (citing *Cornerstone Techs., LLC v. Conrad*, 2003 WL 1787959, at *3 (Del. Ch. Mar. 31, 2003)).

4

hearing has been held, plaintiffs need only make a *prima facie* showing of personal jurisdiction and 'the record is construed in the light most favorable to the plaintiff.'"[7]

Delaware courts resolve questions of jurisdiction using a two-step analysis.[8] First, the court must "determine that service of process is authorized by statute."[9] Second, the defendant must have certain minimum contacts with Delaware such that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice."[10]

## A. The Forum Selection Provision

As its first effort to establish personal jurisdiction over Balt International, Plaintiff argues that Balt International is bound by a Delaware forum selection clause contained in the Purchase Agreement.[11] "When a party is bound by a forum selection clause, the party is considered to have expressly consented to personal jurisdiction."[12] "An express consent to jurisdiction, in and of itself, satisfies the

---

[7] *Id.* (first citing *Benerofe v. Cha*, 1996 WL 535405, at *3 (Del. Ch. Sept. 12, 1996) and then quoting *Cornerstone Techs.*, 2003 WL 1787959, at *3).

[8] *Id.*

[9] *Id.*

[10] *Matthew v. Fläkt Woods Gp. SA*, 56 A.3d 1023, 1027 (Del. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[11] Pl.'s Answering Br. at 14–15.

[12] *Solae, LLC v. Hershey Canada, Inc.*, 557 F. Supp. 2d 452, 456 (D. Del. 2008) (citing *Res. Ventures, Inc. v. Res. Mgmt. Int'l, Inc.*, 42 F. Supp. 2d 423, 431 (D. Del. 1999)).

requirements of Due Process," eliminating the need to undertake a minimum contacts analysis.[13]

Balt International is not a signatory to the Purchase Agreement, but Plaintiff argues the Purchase Agreement's forum selection provision should bind Balt International. For this argument, Plaintiff relies primarily on this Court's decision in *Capital Group Cos. v. Armour*, which bound a non-signatory entity to a forum selection clause after applying a three-step analysis adopted from federal case law: "First, is the forum selection clause valid? Second, are the defendants third-party beneficiaries, or closely related to, the contract? Third, does the claim arise from their standing relating to the . . . agreement?"[14] To exercise jurisdiction over a non-signatory under *Capital Group*, each of the three questions must be answered in the affirmative.

In this case, Defendants do not dispute that the first and third questions must be answered affirmatively. Thus, the operative question is whether Balt International is a third-party beneficiary or closely related to the Purchase Agreement.[15] Plaintiff does not argue that Balt International is a third-party

---

[13] *Id.* (citing *Sternberg v. O'Neil*, 550 A.2d 1105, 1116 (Del. 1988), *abrogated on other grounds by Genuine Parts Co. v. Cepec*, 137 A.3d 123 (Del. 2016)).

[14] *Capital Gp. Cos. v. Armour*, 2004 WL 2521295, at *5 (Del. Ch. Oct. 29, 2004) (citing *Hadley v. Shaffer*, 2003 WL 21960406, at *4 (D. Del. Aug. 12, 2003)).

[15] *See generally* Defs.' Reply Br. at 3–5.

beneficiary. Rather, Plaintiff argues that Balt International is closely related to the Purchase Agreement.

Decisions of this Court have described the closely-related test as an application of the doctrine of equitable estoppel.[16] Equitable estoppel exists "to prevent someone from accepting the benefits of a contract without accepting its

---

[16] Other courts cite to varied rationale, including traditional contract principles, as a basis for the closely-related test. *See generally* John F. Coyle, *Interpreting Forum Selection Clauses*, 104 Iowa L. Rev. 1791, 1821 (2019) [hereinafter Coyle, *Forum Selection Clauses*]. But this Court has consistently described the closely-related test as rooted in equitable estoppel. *See McWane, Inc. v. Lanier*, 2015 WL 399582, at *7 (Del. Ch. Jan. 30, 2015) (applying the closely-related test to bind a non-signatory and explaining that "Delaware law . . . recognizes that in some instances parties should be equitably estopped from challenging a forum selection clause"); *Baker v. Impact Hldg., Inc.*, 2010 WL 1931032, at *4 (Del. Ch. May 13, 2010) (estopping a non-signatory from evading a forum selection clause after holding that the non-signatory had received a direct benefit from the agreement); *Weygandt v. Weco, LLC*, 2009 WL 1351808, at *4–6 (Del. Ch. May 14, 2009) (applying the closely-related test and holding that the non-signatory was "equitably estopped from asserting that this court lacks jurisdiction over it"); *Capital Gp.*, 2004 WL 2521295, at *6–7 (applying the closely-related test to bind a non-signatory and explaining that equitable estoppel applies where "non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the forum selection clause in the contract"); *BE&K Eng'g Co., LLC v. RockTenn CP, LLC*, C.A. No. 8837-VCL Dkt. 41 at 120:5–121:21 (Del. Ch. Sept. 27, 2013) (TRANSCRIPT) (applying the closely-related test to bind a non-signatory and stating that "[i]t is established under our law that if you seek to invoke an agreement, you cannot pick and choose the provisions of that agreement"); *Grosvenor Orlando Assocs. v. HCP Grosvenor Orlando LLC*, C.A. No. 7246-VCG Dkt. 30 at 57:12–59:7 (Del. Ch. Sept. 19, 2012) (TRANSCRIPT) (applying the closely-related test to bind a non-signatory and explaining that "[t]he rationale driving past equitable estoppel cases was based on the principle that [a party] cannot enjoy the benefits of an agreement without accepting its obligations"); *cf. Plaze, Inc. v. Callas*, 2019 WL 1028110, at *9 (Del. Ch. Feb. 28, 2017) (explaining that the equitable estoppel paradigm did not apply because the non-signatories "did not seek to benefit from the contract without accepting their obligations").

7

obligations."[17]  In the context of forum selection provisions, equitable estoppel "prevents a non-signatory to a contract from embracing the contract, and then turning her back on the portions of the contract, such as a forum selection clause, that she finds distasteful."[18]

Under Delaware law, "[t]he 'closely-related' concept expands the availability of the equitable estoppel doctrine to encompass parties who would not technically meet the definition of third-party beneficiaries."[19]  This Court will expand the doctrine in this manner only if: "(1) [the party] receives a direct benefit from the agreement; or (2) it was foreseeable that [the party] would be bound by the agreement."[20]  This decision refers to the first prong as the "direct-benefit" inquiry and the second prong as the "foreseeability" inquiry.

### 1.    The Direct-Benefit Inquiry

In evaluating whether a non-signatory received a direct benefit for the purpose of the closely-related test, Delaware courts have deemed both pecuniary and non-

---

[17] *Plaze*, 2019 WL 1028110, at *8.

[18] *Capital Gp.*, 2004 WL 2521295, at *6 (citing *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 (3d Cir. 2001)).

[19] *iModules Software, Inc. v. Essenza Software, Inc.*, 2017 WL 6596880, at *2 (Del. Ch. Dec. 22, 2017) (ORDER); *see also Capital Gp.*, 2004 WL 2521295, at *6 n.40 & n.41.

[20] *Weygandt*, 2009 WL 1351808, at *4 (citing *Capital Gp.*, 2004 WL 2521295, at *6; *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)).

8

pecuniary benefits sufficient to satisfy the test.[21]  By contrast, indirect benefits have been deemed insufficient to satisfy the test.[22]  Several cases in which this Court has found a direct benefit are instructive.

In *Capital Group*, a closely held company allowed one of its employees to transfer his individually titled stock in the company to a trust for the benefit of himself and his wife.[23]  This transfer was subject to a stock restriction agreement, to which the employee and trust had agreed.[24]  After the couple divorced, the company filed suit against the wife, and she sought to avoid the stock restriction agreement's forum selection clause on the ground that she was not a signatory.[25]  The Court bound the wife to the forum selection provision, reasoning that she had received a direct benefit under the agreement, since the company would not have allowed the stock transfer (and her resulting beneficial interest) but for the agreement's execution.[26]

---

[21] *See Baker*, 2010 WL 1931032, at *4 ("[A] benefit need not be pecuniary to constitute a direct benefit.").

[22] *See, e.g.*, *Capital Gp.*, 2004 WL 2521295, at *7 (holding a non-signatory former spouse's community property interest in a marital asset was not sufficiently direct to meet the closely-related test).

[23] *Id.* at *1.

[24] *Id.* at *2.

[25] *Id.* at *3.

[26] *Id.* at *7.

In *Weygandt*, this Court found that a direct benefit existed under an asset purchase agreement because its terms required that the plaintiff enter into a separate lease agreement with the non-signatory lessor.[27] There, the lease itself was a direct benefit to the lessor because it "provide[d] a lucrative tenant" and would not have been executed but for the asset purchase agreement's terms.[28]

In *Baker*, this Court found that a stockholders agreement directly benefitted the plaintiff because it gave him a "right to a seat on the board of directors."[29]

In *McWane*, this Court found that the stockholders of a target company at the time of a merger received a direct benefit from the merger agreement because they collectively received more than $5 million from the sale of their stock and had a contingent interest of nearly $820,000 in escrow.[30]

Applying the above principles, Plaintiff has not demonstrated that Balt International has a received a benefit so directly from the Purchase Agreement so as to be bound by the agreement's forum selection clause. Plaintiff alleges no facts indicating that Balt International received any sort of benefit from the Purchase Agreement, pecuniary or otherwise. Nor has Plaintiff alleged that the Purchase

---

[27] 2009 WL 1351808, at *5.

[28] *Id.*

[29] 2010 WL 1931032, at *4.

[30] 2015 WL 399582, at *7.

10

Agreement's terms were conditioned on the delivery of a benefit to Balt International. Instead, Plaintiff contends that because the Purchase Agreement "contemplated" that Balt International would obtain regulatory approval and sell the Titan medical device in Europe, it stood to benefit directly from the Purchase Agreement.[31] But Balt USA—not Balt International—acquired Titan pursuant to the Purchase Agreement.[32] Any profits or other benefits Balt International could derive from the Purchase Agreement would be indirect, in that they would only materialize through a separate agreement with Balt USA.[33] In any event, the mere "contemplation" of a benefit does not directly confer one.

### 2. The Foreseeability Inquiry

Before applying the foreseeability inquiry, it bears noting that although this Court frequently cites equitable estoppel as the basis for the closely-related test as a whole, the foreseeability inquiry—one of the test's component parts—in fact derives from slightly different rationale. The foreseeability inquiry "rests on the public policy that forum selection clauses 'promote stable and dependable public relations,'

---

[31] Pl.'s Answering Br. at 15.

[32] Compl. at ¶ 32 (stating that Ferrara "expressed interest in having Balt USA purchase Titan"); *id.* at ¶ 38 (explaining that Plaintiff decided to appoint new counsel to represent it "in its negotiations with Balt USA"); *id.* at ¶ 50 (explaining that under the Purchase Agreement, "Neurvana agreed to sell Titan to Balt USA for a purchase price of up to $16 million").

[33] Defs.' Reply Br. at 4.

and it would be inconsistent with that policy to allow the entities through which one of the parties chooses to act to escape the forum selection clause."[34] Stated another way, the foreseeability inquiry seeks to foreclose an "end-run around an otherwise enforceable [f]orum [s]election [p]rovision."[35] On this basis, cases have applied the foreseeability inquiry to bind "a range of transaction participants" who did not sign the relevant agreement.[36] Delaware courts have applied this concept in the controller context, where the signatory controls the non-signatory involved in the transaction.[37]

Although the direct-benefit and foreseeability inquiries have been articulated as disjunctive,[38] many Delaware cases have relegated the foreseeability inquiry to a subordinate role. For the most part, Delaware decisions applying the closely-related test fall into two categories. In the first category, this Court did not engage in the foreseeability analysis once it found that a direct benefit existed.[39] In the second

---

[34] *Weygandt*, 2009 WL 1351808, at *5 (quoting *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983)).

[35] *Ashall Homes Ltd. v. ROK Entm't Gp., Inc.*, 992 A.2d 1239, 1248 (Del. Ch. 2010).

[36] *Weygandt*, 2009 WL 1351808, at *5 n.26 (quoting *Clinton v. Janger*, 583 F. Supp. 284, 290 (N.D. Ill. 1984); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988)).

[37] *Id.* at *5.

[38] *See, e.g.*, *McWane*, 2015 WL 399582, at *8 ("[I]t would suffice to show *either* foreseeability *or* a direct benefit to demonstrate that a party is closely related to the agreement." (emphasis in original)).

[39] *See Capital Gp.*, 2004 WL 2521295, at *7 (holding that the non-signatory was closely related to the contract's forum selection clause based almost exclusively on its finding that

12

category, this Court analyzed foreseeability only after finding a direct benefit, and the foreseeability inquiry relied in part on the existence of a direct benefit.[40]

This Court has applied the foreseeability inquiry as a standalone basis for satisfying the closely-related test in two scenarios.

In *Ashall* and *Lexington*, the Court relied on a version of the foreseeability inquiry to allow a non-signatory defendant to enforce forum selection clauses *against signatory plaintiffs*.[41] In both cases: The plaintiffs sought to avoid a forum selection provision requiring them to commence litigation in Europe. The plaintiffs used the defendants' non-signatory status offensively to argue that the defendants had no standing to enforce the forum selection provision. And the Court rejected the plaintiffs' arguments, permitting the non-signatories to enforce the forum

---

a direct benefit existed); *Baker*, 2010 WL 1931032, at *4 (same); *BE&K Eng'g*, C.A. No. 8837-VCL Dkt. 41 at 120:5–122:18 (same).

[40] *See McWane*, 2015 WL 399582, at *8 (finding that it was foreseeable that the non-signatories would be bound by a merger agreement's forum selection clause based on the fact that they received a direct benefit from and were asserting claims arising under the merger agreement); *Weygandt*, 2009 WL 1351808, at *5 (finding that the non-signatory received a direct benefit, and further finding that foreseeability existed primarily because the signatory "would have had no reason or legal obligation" to confer such benefit had it not been contractually required); *Grosvenor*, C. A. No. 7246-VCG Dkt. 30 at 57:12–59:7 (finding a direct benefit and concluding foreseeability was present in part because, "[i]n accepting benefits under the contract, [the non-signatory] must also accept the burdens incidental to that contract").

[41] *See Ashall*, 992 A.2d at 1249; *Lexington Servs. Ltd. v. U.S. Patent No. 8019807 Delegate, LLC*, 2018 WL 5310261, at *5–6 (Del. Ch. Oct. 26, 2018).

selection clause because it was "foreseeable" that the non-signatories would seek to do so.[42]

In *iModules*, the Court entered an Order binding a non-signatory entity to a forum selection clause in a non-competition agreement signed by its two controlling stockholders.[43] Consistent with this Court's holding in *Weygandt*, the Court articulated the foreseeability inquiry to require that the signatory control the non-signatory.[44] In so doing, the Court limited the scope of the foreseeability inquiry to controlled non-signatories—those entities that the signatories to the agreement could manipulate in an "end-run" around the forum selection provision.[45] The Court

---

[42] *See Ashall*, 992 A.2d at 1249 (holding that non-signatories had standing to invoke the forum selection provision "because . . . it was foreseeable that the defendants would invoke the Forum Selection Provision of the Share Sale Agreements, and it would be inequitable to permit the Ashall Plaintiffs to escape their contractual promise to litigate all disputes arising under the Share Sale Agreements in England"); *Lexington*, 2018 WL 5310261, at *5 (holding that non-signatories had standing to invoke a forum selection rpvosion because that result was "foreseeable by virtue of the relationship between the signatory and the party sought to be bound"). Although *Ashall* and *Lexington* described the analysis as an application of the closely-related test, those cases could be viewed as establishing a separate application of equitable estoppel principles designed to address when a *signatory* should be required to bring claims against a non-signatory in a contractually selected forum.

[43] *iModules*, 2017 WL 6596880, at *3–4 (citing *Weygandt*, 2009 WL 1351808, at *4–6 and other cases).

[44] *Id.* at *2 (stating that "[d]ecisions have deployed the 'closely related' concept to bind non-party entities *that are controlled by a party to the contract containing the forum selection clause*" (emphasis added)).

[45] *Ashall*, 992 A.2d at 1248 (applying a version of the foreseeability inquiry to foreclose an "end run" around an enforceable forum selection provision).

further explained that the test should not extend to all non-signatories that a signatory "happens to control."[46] Rather, the non-signatory must bear a "clear and significant connection to the subject matter of the agreement."[47] The Court found a "clear and significant connection" where the contract at issue "devote[d] an entire paragraph to discussing what [the directors] could and could not do through [the non-signatory corporation]."[48]

The Court in *iModules* was correct to articulate the foreseeability analysis narrowly. Though striving to "promote stable and dependable public relations," in many respects, the foreseeability inquiry does the opposite. It typically requires rejecting principles of corporate separateness.[49] Rejecting corporate separateness in turn results in uncertainty for transaction participants, including participants who "go to great lengths to avoid" being "haled into a Delaware court" in structuring the

---

[46] *iModules*, 2017 WL 6596880, at *3.

[47] *Id.*

[48] *Id.* at *4.

[49] *Ninespot, Inc. v. Jupai Hldgs. Ltd.*, 2018 WL 3626325, at *5–6 (D. Del. July 30, 2018) (rejecting non-signatory's argument that it maintained the "formality of separate corporate existence" throughout the negotiations and thus should not be treated as "closely related" to the agreement); *Compucom Sys., Inc. v. Getronics Fin. Hldgs. B.V.*, 2012 WL 4963308, at *4 (D. Del. Oct. 16, 2012) (rejecting non-signatory's argument that "it could not have anticipated being haled into a Delaware court when it went to great lengths to avoid that consequence through the complex and sophisticated negotiations that led to the transaction at bar"); *see also id.* ("The facts of record *no doubt highlight the tension between those principles honoring corporate formalities* and the realities of international business transactions carried out through multiple related entities." (emphasis added)).

15

transaction.[50]  Given this aspect of the closely-related test, "[o]ne court has described the test as 'so vague as to be unworkable.'"[51]  To ensure a workable closely-related test, Delaware courts are wise to exercise caution in extending the foreseeability inquiry beyond the facts of *Ashall/Lexington* and *iModules*.

In this case, the facts do not match those of *Ashall/Lexington* or *iModules*. Plaintiff does not seek to use Balt International's non-signatory status to avoid litigating in the contractually selected forum, as the plaintiffs did in *Ashall* and *Lexington*.  And Balt USA does not control Balt International, which was a necessary predicate to the Court's holding in *iModules*.  In fact, Plaintiff alleges the opposite— that Balt International controlled Balt USA—for the purpose of its agency argument.

Because the facts of this case do not align with instances in which this Court has applied the foreseeability inquiry as a standalone basis for satisfying the closely-related test, Plaintiff urges this Court to adopt a new application of the inquiry. Specifically, Plaintiff contends that Balt International's active involvement in negotiating the Purchase Agreement standing alone should satisfy the foreseeability

---

[50] *Compucom*, 2012 WL 4963308, at *4.

[51] Coyle, *Forum Selection Clauses* at 1823 (quoting *Dos Santos v. Bell Helicopter Textron, Inc.*, 651 F. Supp. 2d 550, 556 (N.D. Tex. 2009));  *see also Weygandt*, 2009 WL 1351808, at *5 n.25 (then-Vice Chancellor Strine lamenting that "I find the statements of the foreseeability rule to be somewhat circular—a party is bound when she should know she will be bound").

inquiry. For this argument, Plaintiff relies on two federal decisions—*Compucom* and *Ninespot*.[52]

Both *Compucom* and *Ninespot* relied in the first instance on a direct-benefit analysis when binding a non-signatory to a forum selection provision under the closely-related test. In *Compucom*, a federal court bound a non-signatory parent entity to a forum selection clause in an agreement signed by its wholly-owned subsidiaries.[53] In pertinent part, the agreement gave the non-signatory the right to control resolution of any issues under the agreement, and the non-signatory invoked arbitration provisions post-closing to enforce the agreement.[54] The court described the non-signatory's invocation of the contractual arbitration procedure as a direct benefit and the "most significant[]" factor in its analysis.[55] In *Ninespot*, the court held that a non-signatory—which was neither a subsidiary nor an affiliate of the

---

[52] *Compucom*, 2012 WL 4963308, at *3–4; *Ninespot*, 2018 WL 3626325, at *4–5.

[53] *Compucom*, 2012 WL 4963308, at *3.

[54] *Id.*

[55] *Id.*; *see also id.* ("I decline to allow Getronics to wield the Purchase Agreement as both a sword (defending the purchase price through arbitration despite its non-signatory status) and a shield (challenging the application of the forum selection clause because of its non-signatory status)."); *id.* at *4 ("[P]erhaps, if Getronics had in fact been consistent in maintaining even a façade of separate corporate existence throughout the course of the transaction, I would decline to upset the stated intentions of the parties. However, having taken the tack of purposefully participating in the transaction and actively defending the purchase price through the mechanism provided for in the Purchase Agreement, Getronics must accept the consequences that accompany its conduct.").

17

signatory—was closely related to a stock purchase agreement that was structured to ultimately allocate shares to the non-signatory.[56]

It was only after finding a direct benefit sufficient to deem the non-signatory closely related that *Compucom* and *Ninespot* undertook an alternative foreseeability analysis, which introduced the "active involvement" theory Plaintiff invokes in this case. In *Compucom*, the court held that the parent entity's active involvement in negotiating and executing the transaction satisfied the foreseeability inquiry of the closely-related test.[57] In *Ninespot*, the court seized upon *Compucom*'s active-involvement theory, finding a non-signatory closely related to an agreement because it "was involved in the planning and negotiation of the [agreement] to such a degree that it could expect to be bound by the agreement."[58] Unlike in *Compucom*, the non-signatory in *Ninespot* was not controlled by signatory.

By divorcing the foreseeability inquiry from circumstances in which the signatory controls the non-signatory, *Ninespot* takes the inquiry a step too far. As

---

[56] *Ninespot*, 2018 WL 3626325, at *5 ("Though [the non-signatory] was not set to receive Plaintiff's shares directly from Plaintiff from the execution of the Stock Purchase Agreement, [the non-signatory]'s request to have Plaintiff allocate shares to [an intermediate entity], to then be distributed to [the non-signatory and another entity], was functionally identical because [the non-signatory] was still set to receive a benefit from the execution of the Stock Purchase Agreement.").

[57] *Compucom*, 2012 WL 4963308, at *4 ("It is evident from the record that Getronics was the driving force behind the transaction at issue and actively participated in all facets of such.").

[58] *Ninespot*, 2018 WL 3626325, at *5.

18

discussed above, there are good reasons for narrowly construing the foreseeability inquiry to conform to the scenarios in which this Court has previously invoked it. This decision thus declines to apply the active-involvement theory as a standalone basis for satisfying the closely-related test.

Even if the Court were to apply the active-involvement theory of foreseeability, Plaintiff would fail to meet its burden. Plaintiff does not allege that Balt International affirmatively invoked provisions of the Purchase Agreement. Nor does Plaintiff provide any sort of meaningful indication that Balt International was involved in the negotiation and planning of the deal.[59] In the end, Purchase Agreement's forum selection does not provide a basis for this Court to exercise personal jurisdiction over Balt International.

---

[59] *See, e.g.*, Compl. at ¶ 38 (explaining the appointment of counsel "to represent Neurvana *in its negotiations with Balt USA*" (emphasis added)); *id.* at ¶ 47 ("In order to induce Neurvana to proceed with the transaction, *Balt USA regulatory vice president,* Charles Yang, told [Plaintiff] that Balt could take over responsibility for obtaining [regulatory approval]." (emphasis added)); *id.* at ¶ 60 ("*Balt USA* failed to regularly communicate with Neurvana and kept Neurvana in the dark . . . ." (emphasis added)). Plaintiff creates the impression that Balt International's role in the transaction was as significant as Balt USA's by referring to both entities collectively as "Balt" in its Complaint, but that trick does not persuade.

## B.    The Agency Theory

In the alternative, Plaintiff relies on the agency theory of personal jurisdiction, arguing that Balt USA is an agent of Balt International and that this Court has jurisdiction over the latter based on the specific jurisdictional acts of the former.[60]

"[T]he common-law agency theory of jurisdiction . . . provides a basis for asserting jurisdiction over a non-resident principal by attributing the jurisdictional contacts of the agent to the principal."[61]  The agency theory of jurisdiction involves a factual inquiry requiring the court to determine whether: "(1) the agent ha[s] the power to act on behalf of the principal with respect to third parties; (2) the agent do[es] something at the behest of the principal and for his benefit; and (3) the principal ha[s] the right to control the conduct of the agent."[62]  In the parent-subsidiary context, "the critical question is 'whether the parent corporation dominates the activities of the subsidiary.'"[63]  "A subsidiary is not an agent of its parent merely because the parent: holds a majority of the subsidiary's shares, shares

---

[60] Pl.'s Answering Br. at 12–14.

[61] *Metro Storage Int'l LLC v. Harron*, 2019 WL 3282613, at \*25 (Del. Ch. July 19, 2019) (citing Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 3.04[c][3] (2d ed. & Supp. 2018)).

[62] *EBG Hldgs. LLC v. Vredezicht's Gravenhage 109 B.V.*, 2008 WL 4057745, at \*10 (Del. Ch. Sept. 2, 2008) (alterations in original) (quoting *Fasciana v. Elec. Data Sys. Corp.*, 829 A.2d 160, 169 n.30 (Del. Ch. 2003)).

[63] *Id.* (quoting *Japan Petroleum Co. (Nig.) v. Ashland Oil Co.*, 456 F. Supp. 831, 841 (D. Del. 1978)).

officers and directors with the subsidiary, or finances the operations of the subsidiary."[64]

Plaintiff has not alleged facts sufficient to establish an agency relationship between Balt International and Balt USA for the purpose of personal jurisdiction. The crux of Plaintiff's argument is that because Balt USA and Balt International operate "as two arms of the same business" on different continents, an agency relationship should be inferred.[65] This argument is not persuasive, as it fails to identify any sort of meaningful nexus between the two entities. The Complaint lacks any well-pleaded allegations that Balt International "controls and dominates [Balt USA's] activities."[66] Accordingly, this Court declines to find that jurisdiction over Balt International exists based on agency.

## III. CONCLUSION

For the foregoing reasons, Balt International's motion to dismiss pursuant to Rule 12(b)(2) is GRANTED without prejudice to Plaintiff's right to file claims against Balt International in a court of competent jurisdiction.

---

[64] *Id.* (quoting *Ashland Oil*, 456 F. Supp. at 841).

[65] Pl.'s Answering Br. at 13.

[66] *Cantor Fitzgerald, L.P. v. Prebon Secs. (USA) Inc.*, 731 A.2d 823, 830 (Del. Ch. 1999).